### In re MID–SOUTH ROAD BUILDERS, INC.

### Bankruptcy No. 96–42480 S.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Oct. 3, 1996.

Steven Smith, for Debtor.

### ORDER OF DISMISSAL

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Motion to Dismiss or Convert Chapter 11 Case filed by the U.S. Trustee. This Chapter 11 case was filed on June 28, 1996, and the U.S. Trustee's motion to dismiss filed only one month thereafter, on July 29, 1996. The Bankruptcy Code provides for dismissal of a Chapter 11 case for cause and provides a list of items which include, but do not limit, the definition of "cause":

§ 1112. Conversion or dismissal.

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made

for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b). The U.S. Trustee has cited numerous examples of delay and failure to comply with the Bankruptcy Code such that dismissal of this case is warranted.

The history of this case, even examining only the two months prior to trial, indicates a pattern of not only delay, but also contumacious behavior, that is prejudicial to the creditors. Although this case was filed on June 28, 1996, it was not until the morning of this hearing, August 13, 1996, that the debtor sought to approve employment of its various attorneys. This delay existed despite reminders in open court that the requisite affidavits and requests were overdue, *see* Fed. R.Bankr.Proc. 2016(b), inquiries that there appeared to be conflicts of interest in the proposed representations, problems regarding disclosure requirements.[1] On July 1, 1996, shortly after the filing of this case, the U.S. Trustee sent a letter to the debtor and its attorney, scheduling a required debtor interview for July 8, 1996. Counsel requested that the interview be reset but failed to establish a time for the rescheduled interview. The interview was not held for three weeks. Prior to the hearing of this matter, the U.S. Trustee was unable to obtain verification of the existence of debtor-in-possession bank accounts, obtain copies of tax returns, obtain payment of its fees, or obtain verification that insurance was being maintained. The insurance documentation belatedly submitted by the debtor does not cover all of the assets of the debtor.[2] Operating reports are not being timely filed.

In addition to the delay of the debtor in completing these elementary requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the U.S. Trustee requirements, and necessary measures for protection of assets, the debtor has failed to properly list creditors and assets in its schedules. Although the debtor has an office, there are, amazingly, no office expenses associated with the conduct of the business. The debtor's principal, Mark Gregory Jackson, showed a remarkable unfamiliarity with the bankruptcy schedules of his company, the debtor's finances, assets, worth, and creditors. The testimony of Jackson indicates to the Court that these omissions may be, in part, deliberate. For example, Jackson did not consider Arktrac to be a "creditor," although he admitted that the debtor owes Arktrac money. The Court also did not find Jackson to be a credible witness. Many of his answers, particularly with regard to the hiring of his various attorneys, the status of his creditors, and the operation of his business were evasive and misleading. In response to questions by the U.S. Trustee, Jackson could only admit that the schedules need to be "adjusted."

It is also apparent that there is an absence of a reasonable likelihood of rehabilitation and an apparent inability to effectuate a plan. The debtor cannot even conduct its business because the corporation is not licensed or bonded and, thus, cannot enter into contracts

---

1. Debtor's attorney has since filed a motion to withdraw as counsel.

2. Although the debtor asserted that it paid the fees to the U.S. Trustee and obtained insurance, documents in the Court file indicate that the checks written for these payments were returned for insufficient funds. It is alleged that insurance was canceled as a result.

having any significant value. Without the ability to enter into legitimate contracts in operation of its day-to-day business enterprise, the debtor cannot reorganize. Indeed, it was the revocation of his license and the ensuing litigation he instituted that led to the bankruptcy. Inability to operate in this case reveals an inability to reorganize, pay creditors, or propose a confirmable plan.

The inability to enter into contracts of monetary substance, combined with Jackson's statements and demeanor, raise another concern. It appears to the Court that the business dealings of the debtor are not being maintained within the confines of the law. For example, Jackson stated that the debtor does not enter into contracts, but rather, enters into "agreements," performing hourly work for "some various peoples [sic]." From Jackson's evasive statements, his misleading demeanor while testifying and the mode of operation of the business, the debtor, is at best, circumventing legal licensing and bonding requirements. Such conduct indicates that the case was not filed in good faith, and that any proposed plan cannot meet the good faith requirements of Chapter 11. *See* 11 U.S.C. § 1129(a)(3).

The debtor is also demonstrably unable to conduct a business because its principal apparently has little concept of his own operation. Despite his title as CEO and his high level of education, Jackson was remarkably unfamiliar with the corporate assets, finances, and wages. He had not reviewed the bankruptcy schedules and was unable to testify with any coherence or competency regarding their content. The schedules, signed by the Secretary of the corporation, are inaccurate to the point of misleading. Jackson asserts that he has done nothing to conceal anything from the creditors, but has "provided information to the best of my knowledge and belief." Since his knowledge is so minimal, the statement is corroboration that the debtor is unable to properly conduct its business.

For all of the reasons described, the Court finds that there is absence of any reasonable likelihood of rehabilitation of this debtor. In light of its inability to propose a good faith plan or even obtain contracts for the operation of its business, it cannot effectuate a plan of reorganization. Moreover, there exists a pattern of unreasonable delay which, as evidenced by the Court file, continues, to the prejudice of the creditors. Inasmuch as most, if not all, of the debtor's assets are secured,[3] many of the creditors have already obtained relief from stay, or other relief from the district court to seize debtor's assets, conversion would serve no purpose in this case. Further, in light of these factors, it also appears that the costs of administration of a Chapter 7 case would outweigh any benefit to the creditors in converting the case. Accordingly, it is in the best interest of the creditors to dismiss this case rather than convert it to a case under Chapter 7 of the Bankruptcy Code. It is

**ORDERED:** as follows:

1. The debtor shall pay to the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within ten (10) days of entry of this Order, and simultaneously provide to the U.S. Trustee an affidavit indicating the cash disbursements for the relevant period. If the fee is not paid, the U.S. Trustee shall have judgment against the debtor, Mid–South Road Builders, Inc. for the full amount of the quarterly fees, effective ten (10) days from the entry of this Order.

2. This Chapter 11 case is DISMISSED.

3. The Court retains jurisdiction for this case solely for the purpose of enforcing the provision of paragraph 1, above.

**IT IS SO ORDERED.**

---

**3.** The schedules list only one, small unsecured creditor.